# EXHIBIT B

**SETTLEMENT AGREEMENT**

THIS AGREEMENT is made and entered into by and among Bulgari S.p.A, a corporation duly organized and existing under the laws of Italy, having its principal place of business in Rome, Italy, and Bulgari Corporation of America, a corporation duly organized and existing under the laws of the State of New York, having its principal place of business at 625 Madison Avenue, New York, New York (collectively, "Bulgari"), on the one hand, and Kenneth Jay Lane, Inc. ("KJL"), a corporation duly organized and existing under the laws of the State of New York, having its principal place of business at 20 West 37th Street, New York, New York, on the other hand.  Bulgari and KJL may sometimes be referred to herein individually as a "Party" and collectively as the "Parties."

**WITNESSETH**

WHEREAS, Bulgari is the owner of U.S. Copyright Registration No. VA-1-727-917, issued on July 19, 2010, for PAOLO BULGARI CROSS PRODUCTS CATALOGUE 2010 (the "Registration).

WHEREAS, the Registration covers, among other jewelry designs, the following distinctive ring design (the "Bulgari Copyrighted Ring Design"):



WHEREAS, KJL manufactured, imported, advertised, promoted, distributed, sold and/or

offered for sale, and/or is causing to be manufactured, imported, advertised, promoted, distributed, sold and/or offered for sale, without authorization or license, the following article of jewelry that, Bulgari asserts, is an imitation of the Bulgari Copyrighted Ring Design (the "Accused Ring Product"):



**Kenneth Jay Lane Accused Ring Product**

WHEREAS, Bulgari owns a U.S. design patent (U.S. Design Patent No. D606,894), issued on December 29, 2009, for the following distinctive bracelet design (the "Bulgari Design Patent"):

| Bulgari Design Patent | Actual Bulgari Bracelet |
|---|---|
|  |  |

WHEREAS, KJL manufactured, imported, advertised, promoted, distributed, sold and/or offered for sale, and/or is causing to be manufactured, imported, advertised, promoted, distributed, sold and/or offered for sale, without authorization or license, the following article of jewelry that, Bulgari asserts, is an imitation of the Bulgari Design Patent (the "Accused Bracelet Product"):



**Kenneth Jay Lane Accused Bracelet Product**

WHEREAS, the Accused Ring Product and the Accused Bracelet Product are hereinafter referred to collectively as the "Accused Products."

WHEREAS, on August 13, 2012, Bulgari filed an action against KJL with respect to the Accused Products in the United States District Court for the Southern District of New York, captioned *Bulgari S.p.A., et al. v. Kenneth Jay Lane, Inc.*, 12 cv 6194 (AKH), seeking injunctive relief and damages for KJL's alleged acts of copyright infringement, design patent infringement and unfair competition (the "SDNY Action");

WHEREAS, in consideration of the promises, releases, payments and undertakings hereinafter set forth, the Parties now desire to fully and finally settle all claims, causes of actions, disputes and controversies arising out of or relating to the transactions, occurrences and allegations set forth above, pursuant to the terms set forth below.

NOW, THEREFORE, for good and valuable consideration, including but not limited to the mutual respective covenants, releases and undertakings of the Parties herein contained, the Parties hereto agree as follows:

1. **Representations and Warranties**

   KJL represents and warrants that:

   (a)    It has previously provided to Bulgari's counsel, by emails dated July 25, 2012, August 3, 2012, and August 14, 2012, complete and accurate information with respect to the Accused Ring Product, including (i) the total number of units of the Accused Ring Product

purchased by KJL (246); (ii) the total number of units of the Accused Ring Product sold by KJL (240); (iii) the total number of units of the Accused Ring Product that remain in KJL's inventory (6); and (iv) the party from which KJL purchased the Accused Bracelet Product (Gem-Craft, Inc., 1420 Elmwood Avenue, Cranston, Rhode Island).

(b) It has previously provided to Bulgari's counsel, by letters dated December 13, 2011 and January 20, 2012, complete and accurate information with respect to the Accused Bracelet Product, including (i) the total number of units of the Accused Bracelet Product purchased by KJL (70); (ii) the total number of units of the Accused Bracelet Product sold by KJL (61); (iii) the total number of units of the Accused Bracelet Product that remain in KJL's inventory (0 — 40 units of the Accused Bracelet Product having been destroyed in or around February 2012, and 9 units of the Accused Bracelet Product having been returned to KJL's supplier, Design By Nova); and (iv) the party from which KJL purchased the Accused Bracelet Design (Design By Nova, 1000 6th Avenue, New York, New York).

(c) It has not used, or directed any third party to use any Bulgari products, whether they be physical products or images thereof, in the process of designing or sourcing any jewelry products in KJL's current product selection.

2. **Cessation of Sale of the Accused Products**

(a) KJL agrees to cease and desist from designing, creating, manufacturing, importing, sourcing, exporting, distributing, supplying, purchasing, offering for sale, selling, promoting, advertising, marketing, commercially exploiting and/or trafficking in, anywhere in the world, any products constituting or bearing:

(i) the Accused Products;

(ii) any design substantially similar in overall appearance to the Bulgari

4

Copyrighted Ring Design and/or substantially the same in appearance to the Bulgari Design Patent;

(iii)  any design substantially similar in overall appearance to any Bulgari design that is the subject of copyright protection, whether such design has been registered by Bulgari or not;

(iv)  any design substantially the same in appearance to any Bulgari design that is the subject of a subsisting U.S. design patent owned by Bulgari; and/or

(v)  any design confusingly similar to any Bulgari design that is the subject of trademark or trade dress protection.

(b)  KJL agrees that it will not use, or direct any third party to use any Bulgari products, whether they be physical products or images thereof, in the process of designing or sourcing any KJL products, without Bulgari's express written authorization.

3.  **Settlement Payment**

Upon the execution of this Agreement by all Parties, KJL shall make a settlement payment to Bulgari in the form of a check in the amount of $25,000.00 (the "Settlement Payment") made payable to Bulgari S.p.A.

4.  **Disposition of Inventory**

Within three (3) business days following the execution of this Agreement, KJL shall turn over to Bulgari's counsel for destruction all remaining inventory of the Accused Products.

5.  **Released Claims**

It is acknowledged and agreed that Bulgari is relying on the accuracy of the representations and warranties set forth in Paragraph 1 above. Based on the accuracy of those representations and warranties, and in consideration of the full and faithful performance of all of

the terms and conditions of this Agreement:

(a) Bulgari, for itself and its legal successors and assigns, hereby releases and forever discharges KJL, its shareholders, officers, directors, employees, parent companies, subsidiaries, affiliates, legal successors and assigns, from any and all claims, including attorney fees, demands, liabilities, causes of action, or any debts, obligations, or other costs of any kind or nature arising from or related to the sale of the Accused Products, but only as to the number of units of the Accused Products it has reported that it purchased and/or sold, as set forth in Paragraph 1 of this Agreement.

(b) KJL, for itself and its legal successors and assigns, hereby releases and forever discharges Bulgari, its shareholders, officers, directors, employees, subsidiaries, affiliates, legal successors and assigns, from any and all claims, demands, liabilities, causes of action, or any debts, obligations or other costs of any kind or nature arising out of or in connection with any claims that could have been asserted by KJL against Bulgari, arising from or related to its purchase and sale of the Accused Products.

6. **Future Use of Bulgari's Intellectual Property**

(a) In the event that Bulgari discovers that KJL is importing, purchasing, manufacturing, selling, offering for sale, advertising, promoting, marketing and/or distributing product anywhere in the world that, according to Bulgari, infringes any of Bulgari's intellectual property (trademarks, trade dress, copyrights, and/or design patents):

(i) Bulgari shall provide KJL with a written notice of the claimed infringing conduct (the "Notice of Infringement");

(ii) No later than five (5) days from the date the Notice of Infringement is received, KJL may cure the claimed infringement by:

(A) providing written confirmation to Bulgari that the claimed

infringing products have been removed from sale;

     (B) disclosing the quantity of the claimed infringing products produced, shipped, sold and remaining in inventory;

     (C) agreeing to the destruction of all of the claimed infringing products that are in inventory or that remain unsold; and

     (D) paying to Bulgari three (3) times the gross profit on the wholesale price of the claimed infringing products within thirty (30) days from the date the Notice of Infringement is received.

  (b) In the event KJL fails to cure in accordance with the foregoing provisions, Bulgari may bring an action against KJL and seek any relief available to it with respect to the claimed infringement(s) and/or for breach of this Agreement. If on a motion for preliminary injunction in any such action Bulgari demonstrates that it is likely to succeed on the merits of its claim for breach of KJL's material obligations under this Agreement and/or for trademark infringement, trade dress infringement, copyright infringement, or design patent infringement, then KJL shall not contest the issuance of such injunctive relief on the grounds that Bulgari has not shown irreparable harm, or that the balance of hardships tips in KJL's favor. In addition, should Bulgari prevail in such action, it shall be entitled to:

     (i) recover three (3) times the gross profit on the wholesale price of each infringing product, calculated as KJL's wholesale sales price minus KJL's cost of goods, plus any pre-judgment interest on such amount, or at Bulgari's election, liquidated damages in the amount of $25,000.00 per infringement;

     (ii) recover the court costs and reasonable attorney's fees it has incurred in litigating the action; and

(iii)    any injunction to which Bulgari may be entitled, whether preliminary or permanent, shall include a provision requiring KJL to segregate all remaining inventory of the infringing products for destruction.

7. **Breach of this Agreement**

The released matters referred to in Paragraph 5 above shall not encompass any claim for breach of this Agreement and/or any claim for contempt of the Permanent Injunction On Consent referred to in Paragraph 9 below.  Any suit for breach of this Agreement shall be brought in the United States District Court for the Southern District of New York, and may be referred to the Hon. Alvin K. Hellerstein as a related action to the SDNY Action.  With respect to any such suit, the Parties waive any objection that they might have now or hereafter to the jurisdiction and/or venue of any such suit, and hereby waive any claim or defense of lack of jurisdiction and/or inconvenient forum.  The prevailing party in any such suit shall recover its costs and reasonable attorney's fees from the other party.

8. **Governing Law**

This agreement shall be interpreted under the laws of the State of New York.

9. **Permanent Injunction**

Concurrently with the full execution and delivery of this Agreement, the Parties shall conclude the SDNY Action by executing and submitting a Permanent Injunction On Consent, in the form annexed hereto as Schedule A, to the Chambers of the Hon. Alvin K. Hellerstein, with a request that it be "So Ordered."

10. **No Coercion, Entire Agreement**

The undersigned further represent that no promise, inducement or agreement not contained or referred to in this Agreement has been made to them, and that this Agreement

represents the entire agreement between the Parties and cannot be varied or amended except by a written document signed by the Parties.  No unexecuted, preliminary or interim drafts of this Agreement can be referred to and/or relied upon by any party in any subsequent proceedings between the Parties in any suit for breach of this Agreement.

11.     **Binding Effect**

All undertakings herein by any Party shall be binding upon that Party's successors, assigns, affiliates, parent companies, related companies, subsidiaries, officers, directors, agents, shareholders, representatives, and principals.

12.     **Facsimile Execution**

A facsimile signature shall be as valid as an original signature for all purposes hereunder.

13.     **Counterparts**

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

13.     **Notices**

All notices and other communications hereunder shall be in writing (including telecopy or similar writing) and shall be sent, delivered, or mailed, addressed or telecopied to:

(a)     If to Bulgari:

> Laurence Morel-Chevillet, Esq.
> IP Senior Counsel
> Bulgari S.p.A.
> Lungotevere Marzio 11
> 00186 Roma
> Fax. +39 06 688 10 552

       with a copy to:

            Louis S. Ederer, Esq.
            Arnold & Porter LLP
            399 Park Avenue
            New York, New York 10022
            Fax:  212.715.1399

(b)    If to KJL:

            Chris Sheppard
            Executive Vice President
            Kenneth Jay Lane, Inc.
            20 West 37 Street, 9th Floor
            New York, New York 10018
            Fax:  212.629.5238

14.    **Authority to Execute**

       The undersigned represent that they have authority to execute this Agreement on behalf of the respective Parties and to carry out all obligations imposed hereunder.  All corporate authorizations or approvals have been undertaken to enter into this Agreement, and the execution of this Agreement will not violate any articles, by-laws, contracts, statutes, laws or other duties or obligations.

                               *      *      *

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by their authorized representatives as follows, to become effective on the last date of execution indicated below:

Dated: Rome, Italy
August ___, 2012

BULGARI S.P.A.

By: _____

Print Name: Oipcorro Rujin

Title: _____

Dated: New York, New York
August 30, 2012

BULGARI CORPORATION OF AMERICA

By: _____

Print Name: Isaac Aframian

Title: Senior Director of Finance & Administration

Dated: New York, New York
August 23, 2012

KENNETH JAY LANE, INC.

By: _____

Print Name: KENNETH JAY LANE

Title: PRESIDENT

11